UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JAMES   RAYMOND,   MARK   LEE,   AND   JOSEPH
LILLLARD,

                                        Plaintiffs,

                                                          15-cv-05803 (RJS)

                    -against-


MID-BRONX HAULAGE CORP., AND ARNOLD SIRICO,

                                        Defendants.
------------------------------------------------------------------------x



MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT
MOTION


                              TRIVELLA & FORTE, LLP
                              1311 Mamaroneck Avenue, Suite 170
                              White Plains, New York 10605
                              By:  Jael Dumornay
                              Jonathan M. Bardavid
                              Telephone: (914) 949-9075
                              Facsimile: (914) 949-4752

## Table of Contents

PRELIMINARY STATEMENT ...........................................................................................1

PROCEDURAL HISTORY ...............................................................................................2

STATEMENT OF FACTS .................................................................................................2

STANDARD OF REVIEW ................................................................................................7

LEGAL ARGUMENT .......................................................................................................8

    I.    Defendants are Entitled to Summary Judgment on Plaintiffs' Claims Because There is No Genuine Issue of Fact Requiring Trial Regarding the Applicability of the FLSA MCA exemption to Drivers Employed by Mid-Bronx. ......................................................................8

        A.    Mid-Bronx Is A Motor Carrier Within The Jurisdiction Of The U.S. Department Of Transportation. ..............................................................................................................9

        B.    Mid-Bronx's Drivers Fall Within The Classification Of Employees Covered By The MCA Exemption..............................................................................................................11

        C.    Mid-Bronx Satisfies the MCA exemption Interstate Commerce Requirement............12

    II.    Defendants are Entitled to Summary Judgment on Plaintiffs' Claims Because There is No Genuine Issue of Fact Requiring Trial Regarding the Applicability of the FLSA MCA exemption to Plaintiffs' New York Labor Law Claims. ......................................................15

    III.    Defendant Arnold Sirico is Entitled to Summary Judgment on Plaintiffs' Claims Because He Is Not An Employer Within The Meaning Of The FLSA Or The NYLL. ...........16

CONCLUSION.................................................................................................................20

## Table of Authorities

**Cases**

Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41 (E.D.N.Y.2010) ...................................12

Alvarado v. I.G.W.T. Delivery Sys., Inc., 410 F.Supp.2d 1272 (S.D.Fla.2006)..........................14

Baez v. Wells Fargo Armored Serv. Corp., 938 F.2d 180 (11th Cir. 1991) ...............................14

Bilyou v. Dutchess Beer Distrib. Inc., 300 F.3d 217 (2d Cir.2002). ...................................passim

Brod v. Omya, Inc., 653 F.3d 156  (2d Cir.2011)..........................................................................8

Carter v. Dutchess Community College, 735 F.2d 8 (2d Cir., 1984) .........................................17

Chao v. Vidtape, Inc., 196 F.Supp.2d 281 (E.D.N.Y.2002)........................................................20

Copantitla v. Fiskardo Estiatorio, Inc., 788 F.Supp.2d 253 (S.D.N.Y.2011)..............................20

Craft v. Ray's LLC, 2009 WL 3163148 (S.D. Ind. Sept. 29, 2009) .....................................13, 14

Cruz v. AAA Carting & Rubbish Removal, Inc., 116 F. Supp. 3d 232 (S.D.N.Y. 2015) ........9, 11

F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288 (2d Cir. 2010).................................................7, 8

Graham v. Town & Country, 865 F.Supp.2d 952 (W.D. Missouri 2011) ...............................9, 10

Hernandez v. Brinks Inc., No. 08-20717-CIV, 2009 WL 113406 (S.D. Fla. Jan. 15, 2009 ........14

Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013).............................................................16, 19

Jiao v. Chen, 03-CV- 0165, 2007 WL 4944767 (S.D.N.Y. 2007)..............................................18

McBeth v. Gabrielli Truck Sales, Ltd., 768 F.Supp.2d 383 (E.D.N.Y.2010) .............................11

Morris v. McComb, 332 U.S. 422 68 S.Ct. 131, 92 L.Ed. 44 (1947)..........................................11

Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442 (S.D.N.Y. 2015)........................................19

Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp.2d 454 (S.D.N.Y. 2011).....................7, 8

Tracy v NVR, Inc, No. 04–CV–6541L, 2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009).......17, 18

U.S. v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed 2010 (1947) .............................12

Walden v. Sanitation Salvage Corp., Inc., No. 14 CIV. 112 ER, 2015 WL 1433353 (S.D.N.Y.
    Mar. 30, 2015, Ramos, J.) ....................................................................................................11

**Statutes**

29 U.S.C. § 213 (b) (1)..................................................................................................................9

29 U.S.C. §201 et  seq..................................................................................................................1

29 U.S.C. §207(a) (1)....................................................................................................................8

29 U.S.C.§ 203(d) .......................................................................................................................16

49 U.S.C § 31132(1)......................................................................................................................9

49 U.S.C. § 31501 .......................................................................................................................10

49 U.S.C. §3102 (14) ....................................................................................................................9

49 U.S.C. §3102 (15) ....................................................................................................................9

49 U.S.C.§31502(b) .....................................................................................................................10

Article 6 §§ 190 et seq...................................................................................................................1

N.Y. Lab. Law § 190(3). ..............................................................................................................16

**Rules**

Fed. R. Civ. P. 56(a)......................................................................................................................7

**PRELIMINARY STATEMENT**

Defendants Mid-Bronx Haulage Corp., ("Mid-Bronx") and Arnold Sirico submit this Memorandum of Law in support of their Motion for Summary Judgment on Plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. §201 et. seq., ("FLSA"), the New York Labor Law, Article 6 §§ 190 et seq., ("NYLL") and 12 New York Codes, Rules and Regulations ("N.Y.C.R.R.") §142-2.2.

 As set forth in detail herein, Defendants are entitled to summary judgment dismissing the Second Amended Complaint in its entirety because there is no genuine issue of material fact requiring trial. The undisputed factual record developed during discovery demonstrates that Plaintiffs James Raymond, Mark Lee, and Joseph Lillard are exempt from FLSA and NYLL's overtime requirements under the Motor Carrier Act ("MCA") exemption contained in the FLSA. Succinctly, Mid-Bronx is a motor carrier that transports cargo in the stream of interstate commerce and within the jurisdiction of the United State Department of Transportation. Plaintiffs are drivers who perform safety activities related to the safe operation of commercial motor vehicles on public highways. Drivers employed by Mid-Bronx transport cargo in a continuous stream of interstate commerce, facilitating the disposal of the cargo in landfills outside of New York State. Accordingly, Plaintiffs are exempt from Federal, State and Local overtime requirements under the MCA exemption.

Additionally, the undisputed factual record demonstrates that Defendant Arnold Sirico is entitled to summary judgment dismissing Plaintiffs' claims against him individually. The record is devoid of facts from which Plaintiffs could meet their burden and establish the elements of the economic realities test or demonstrate that Mr. Sirico has operational control over their employment. Mr. Sirico did not supervise Plaintiffs or establish Plaintiffs' work schedules.

Indeed, Mr. Sirico does not hire, supervise, or discipline employees. Mr. Sirico did not

1

determine Plaintiffs' rate of pay or method of payment. Indeed, Plaintiffs' rate of compensation was the product of Mid-Bronx's collective bargaining negotiations with the labor union representing Plaintiffs and similarly situated employees. Mr. Sirico also does not maintain employment records for Plaintiffs. The record is devoid of any facts to demonstrate that Mr. Sirico exercised operational control over Plaintiffs' employment. Accordingly, Plaintiff cannot meet their burden to establish that Mr. Sirico is an employer within the meaning of the FLSA or NYLL and the Complaint should be dismissed as to Mr. Sirico.

## PROCEDURAL HISTORY

On January 5, 2016, Plaintiffs James Raymond, Mark Lee, and Joseph Lillard filed the Second Amended Complaint ("Complaint") alleging that Defendants Mid-Bronx and Arnold Sirico denied them overtime compensation in violation of the FLSA, NYLL, and the NYCRR. See Declaration of Jael Dumornay ("Dumornay Decl.") Ex. A.

On January 15, 2016, Defendants filed their Answer denying the allegations set forth in the Complaint and asserting a series of affirmative defenses including that the Complaint fails to state a claim and Plaintiffs are exempt from the overtime requirements under the MCA exemption, set forth in the FLSA and the NYLL. See Dumornay Decl., Ex. B.

Discovery is now complete and Defendants move for summary judgment dismissing the Complaint in its entirety. The MCA exemption warrants dismissing the Complaint. Moreover, the undisputed record discovery reveals that Plaintiffs failed to state a claim against Mr. Sirico because Mr. Sirico is not an employer within the meaning of the FLSA or NYLL. Plaintiffs' inability to meet their burden warrants dismissing the Complaint as it relates to Mr. Sirico.

## STATEMENT OF FACTS

Mid-Bronx is a New York corporation located in the Bronx, NY. See Declaration of Arnold

Sirico ("Sirico Decl."), ¶2. Mid-Bronx is engaged in the business of, carting and disposing of putrescible solid waste and cardboard, which it collects from commercial establishments throughout New York City. See Sirico Decl., ¶3. The materials collected by Mid-Bronx are transported in a continuous stream of interstate commerce to disposal facilities and landfills located outside of New York. See Declaration of Vincent Verrilli, ("Verrilli Decl.,") ¶5; Sirico Decl., ¶¶ 10, 11, 13, 15; Dumornay Decl., Exs. C & D.

Mid-Bronx collects and transports approximately 33,000 tons of garbage, 6,000 tons of recycling and 4000 cubic yards of construction debris on an annual basis. Sirico Decl., ¶4. Mid-Bronx employs commercial drivers to collect and transport the materials it collects. The materials collected by Mid-Bronx's drivers are transported to one of two putrescible solid waste transfer stations selected by Mid-Bronx and designated for the disposal of Mid-Bronx's materials. Id. at ¶10. These transfer stations, Metropolitan Transfer Station ("Metropolitan") and Action Carting ("Action"), were specifically selected by Mid-Bronx to ensure that the materials transported by Mid-Bronx remain in the stream of interstate commerce. Id.

Mid-Bronx intended that its collection of materials from its customers and delivery of same to transfer stations was the first leg or segment of a stream of interstate commerce. See Sirico Decl., 10, 15. To ensure that its materials remained in interstate commerce, Mid-Bronx engaged in a multi-step process. First, Mr. Sirico in his capacity as President of Mid-Bronx, sought to verify industry-wide information. It is well known within the New York City Waste and Recycling Industry that there are very limited waste disposal sites within New York State. It is also well known in the New York City Waste and Recycling Industry that certain transfer stations, specifically Metropolitan and Action transported the materials delivered there to disposal sites outside of New York. See Declaration of Vincent Verrilli, ("Verrilli Decl.,") ¶5; Sirico Decl., ¶¶

11, 13. Mr. Sirico sought to confirm this industry information through communications with representatives from Metropolitan and Action. Sirico Decl., ¶¶ 12, 14. Representatives from these entities confirmed that they disposed of materials delivered to them by delivering same to facilities and landfills outside of New York State. Verrilli Decl., ¶ 8; Sirico Decl., ¶12, 14.

Relying on this industry knowledge and Mr. Sirico's communications with Metropolitan and Action, Mid-Bronx selected Metropolitan and Action as the transfer stations that they would use for disposal of materials collected. Sirico Decl., ¶10, 15. Mid-Bronx directed its drivers to deliver all materials collected to Metropolitan and Action's transfer stations. Declaration of Robert Stark ("Stark Decl.,") ¶ 12. At the time that Mid-Bronx's drivers collect the garbage and recycling and deliver it to the transfer stations, Mid-Bronx envisaged and specifically intended that these materials would be transported in interstate commerce out of New York State for disposal as represented to Mr. Sirico by Metropolitan and Action. Sirico Decl., ¶10, 15. Mid-Bronx intentionally choose to deliver to Metropolitan and Action because Mid-Bronx wanted the materials it delivered to remain in the stream of interstate commerce, as this was a necessary requirement for the MCA exemption. Sirico Decl., ¶15.

Mr. Sirico has on several occasions sought to re-confirm that the initial representations made to him by Metropolitan and Action to ensure that this information remains accurate. Sirico Decl., ¶¶12, 14. On each of these occasions, Metropolitan and Action has re-confirmed its representations to Mid-Bronx that the materials delivered to their transfer stations are and would continue to be transported in interstate commerce out of New York State for disposal. Id.

Mid-Bronx is a motor carrier within the jurisdiction of the United States Department of Transportation ("USDOT"). Sirico Decl., ¶7. The USDOT requires that motor carriers transporting passengers or hauling cargo in interstate commerce register with the USDOT Federal Motor

4

Carrier Safety Administration ("FMCSA") and obtain a US DOT number, which is used when collecting and monitoring a company's safety information acquired during audits, compliance reviews, crash investigations, and inspections. In accordance with the USDOT requirements, Mid-Bronx is registered with the FMCSA. Sirico Decl., ¶7. The USDOT has assigned Mid-Bronx a USDOT number, which is displayed on each of its trucks. Id. This number is used to track safety information collected during USDOT audits, compliance reviews, crash investigations, and inspections of Mid-Bronx.

As a motor carrier engaged in interstate commerce, Mid-Bronx and its drivers are required to comply with USDOT safety requirements. Such USDOT requirements include the maintenance of driver and vehicle maintenance record and employee drug and alcohol testing programs. Sirico Decl., ¶¶8-9. Mid-Bronx's drivers are subject to drug testing to insure drivers are operating the truck in a safe and sober manner. Stark Decl., ¶11. Drivers employed by Mid-Bronx operate commercial motor vehicles, which weigh more than 10, 001 pounds. Mid-Bronx's drivers operate packer trucks and roll-off trucks which when full, weigh in excess of 36,000 pounds. See Transcript of Deposition of James Raymond ("Raymond Dep.), 79:5-23. Sirico Decl., ¶4. The packer trucks are manned by two drivers who work together to pick up garbage and are responsible for the safe operation of the truck on the public highways the truck travels on. Stark Decl., ¶ 5; Sirico Decl., 4. The roll off trucks are used to collect cardboard and paper recycling. Sirico Decl., 4.

Mid-Bronx drivers perform a variety of activities, which directly affect the safe operation of the trucks. For instance, the drivers participate in truck inspections prior to and after completion of their route to ensure that the vehicle is safe to operate. Stark Decl., ¶6; Raymond Dep., 91:14-95:3; Transcript of Deposition of Mark Lee ("Lee Dep.,") 36:24-39:9; Transcript of Deposition of

Joseph Lillard ("Lillard Dep.,") 55:1-20. Mid-Bronx drivers also have discretion to reject a load if it is a hazard to the truck, the crew, or public and exercise discretion in the safe operation of the packer and , the maintenance of the load. Stark Decl., ¶8. Moreover, the drivers are expected to inform management of any unsafe conditions which arise during their shift. Stark Decl., ¶ 10.Further, for safety purposes Mid-Bronx's drivers are required to wear high visibility clothing. Stark Decl., ¶11. Lillard Dep., 37:21-38:9.

Plaintiffs James Raymond, Mark Lee, and Joseph Lillard are employed by Mid-Bronx as drivers. See Dumornay Decl., Ex. A, ¶¶ 24, 28. As drivers employed by Mid-Bronx, each of the Plaintiffs was represented by the labor organization, the Private Sanitation Union Local 813, International Brotherhood of Teamster ("Local 813."). Local 813 entered into a collective bargaining agreement with Mid-Bronx, which governed the wages, hours, and other conditions of employment for drivers employed by Mid-Bronx. See Declaration of Laura Park ("Park Decl.,") Ex. A. These wages, hours, and conditions of employment are the product of collective bargaining negotiations between Mid-Bronx and Local 813.

Each of the Plaintiffs has a commercial driver's license, which permitted them to operate commercial motor vehicles weighing in excess of 10,001 pounds. See Raymond Dep., 79:5-23, Lee Dep., 13:22; 25-10-17; Lillard Dep., 25:10-23. Each of the Plaintiffs worked the Night Shift for Mid-Bronx and was supervised by Robert Stark. Mr. Stark made all decisions regarding Plaintiffs assigned tasks, vacation requests, issues with their route and any other issues, which arise in the course of Plaintiffs employment. Lillard Dep., 39:22-24. Indeed, Mr. Stark exercised control over all facets of Plaintiffs' employment. Plaintiff Lillard candidly stated that Mr. Stark "is our supervisor, our God. He runs everything." Lillard Dep., 39:22-24. Mr. Lillard also described Mr. Stark is the "the ultimate supervisor" and notes, "he's the man that makes all the decision." Lillard

Dep., 40:17-19.

Each of the Plaintiffs operated a packer truck and was engaged in the collection, carting, and disposal of garbage from Mid-Bronx's customers. Stark Decl., ¶¶13-15. Each of the Plaintiffs was directed to and did deliver the materials they collected to Metropolitan and Action. Stark Decl., ¶12. Each of the Plaintiffs were required by Mid-Bronx to and did in fact perform various safety procedures during their work shift.

None of the Plaintiffs were supervised by Mr. Sirico. Sirico Decl., ¶6. None of the Plaintiffs had their work schedules determined or controlled by Mr. Sirico. Sirico Decl., ¶¶5-6. None of the Plaintiffs had their rate of pay or method of payment determined by Mr. Sirico. Sirico Decl., ¶6. Mr. Sirico does not maintain employment records for Plaintiffs. See Park Decl., ¶2. Plaintiffs did not interact with Mr. Sirico unless they sought out Mr. Sirico.

## STANDARD OF REVIEW

Summary judgment motions are governed by a familiar standard of review:

Summary judgment is appropriate where the pleadings, discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. Where the moving party meets that burden, the opposing party must come forward with specific admissible evidence demonstrating the existence of a genuine dispute of material fact. F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp.2d 454, 467 (S.D.N.Y. 2011).

In deciding a motion for summary judgment, the Court must "'construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir.2011). Nevertheless, to defeat a summary judgment motion, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation. F.D.I.C., 607 F.3d at 292. To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." Senno, 812 F.Supp.2d at 467–68. Where it is clear that no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment should be granted. F.D.I.C., 607 F.3d at 292.

## LEGAL ARGUMENT

I. **Defendants are Entitled to Summary Judgment on Plaintiffs' Claims Because There is No Genuine Issue of Fact Requiring Trial Regarding the Applicability of the FLSA MCA exemption to Drivers Employed by Mid-Bronx.**

The Court should grant Defendants summary judgment on the Complaint and dismiss Plaintiffs' FLSA claims because Plaintiffs are exempt from the FLSA overtime requirement under the MCA exemption. In the Complaint, Plaintiffs allege that Defendants Mid-Bronx and Arnold Sirico failed to pay them overtime compensation in violation of the FLSA. See Dumornay Decl., Ex. A. Subject to certain exemptions, the FLSA requires employers to pay overtime compensation to employee who work more than 40 hours in a week. 29 U.S.C. §207(a) (1). However, the FLSA also provides a number of exemptions, which exclude certain employees from its overtime requirements. One such exemption is the MCA exemption, which provides that the FLSA's overtime requirements shall not apply to any employee who falls under the Secretary of Transportation's authority to establish qualifications and maximum hours of service pursuant to

Section 204 of the Motor Carrier Act of 1935. 29 U.S.C. §213 (b)(1). See Bilyou v. Dutchess Beer Distrib. Inc., 300 F.3d 217, 222–23 (2d Cir.2002).

    To establish that an employee is covered by the MCA exemption, an employer must demonstrate that: (i) it is an employer whose transportation of passengers or property by motor vehicle is under the jurisdiction of the Secretary of Transportation; (ii) the employee is within the classification of employees covered by the MCA, i.e., a driver, driver's helper, loader or mechanic; and (iii) the employee engages in activities of a character directly affecting the safety in operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce. 29 C.F.R. § 782; Graham v. Town & Country, 865 F.Supp.2d 952, 956 (W.D. Missouri 2011). Here, Mid-Bronx satisfies all the criteria required for the MCA exemption and Plaintiffs are exempt from the FLSA overtime requirements.

## A. Mid-Bronx Is A Motor Carrier Within The Jurisdiction Of The U.S. Department Of Transportation.

    To be eligible for the MCA exemption, an employer must be a motor carrier within the jurisdiction of the Secretary of Transportation. 29 U.S.C. § 213 (b)(1); 29 C.F.R. § 782. A motor carrier is defined as a person or company providing transportation for compensation via a commercial motor vehicle that has a gross vehicle weight of at least 10,001 pounds. 49 U.S.C. §3102 (14); 49 U.S.C. §3102 (15); 49 U.S.C § 31132(1); Cruz v. AAA Carting & Rubbish Removal, Inc., 116 F. Supp. 3d 232, 246 (S.D.N.Y. 2015). A motor carrier is within the jurisdiction of the Secretary of Transportation if the carrier is transporting passengers or property on public highways in interstate or foreign commerce. 49 U.S.C. §§ 31501; 49 U.S.C. 31502(b).     The U.S. Department of Transportation ("USDOT") requires motor carriers transporting passengers or hauling cargo in interstate commerce to be registered with the USDOT Federal Motor Carrier

9

Safety Administration ("FMCSA"). The USDOT assigns a USDOT number to register motor carriers within its jurisdiction. The USDOT number is used when collecting and monitoring a company's safety information acquired during audits, compliance reviews, crash investigations, and inspections.

In Graham, 865 F.Supp.2d 952 (W.D. Mo. 2011), the court evaluated whether the defendant, a trash collection business, was exempt from the FLSA's overtime requirements under the MCA exemption. In examining whether the Secretary of Transportation had jurisdiction over defendant's transportation of garbage, the Court in Graham considered whether the defendants operations demonstrated that it was under the jurisdiction of the USDOT and evidence regarding whether : (i) the defendant's trucks were registered with the USDOT, (ii) the defendant was subject to audits and inspections by the USDOT, and (iii) the defendant's employees compiled with the USDOT's pre-trip and post-trip inspection requirements.  In Graham, the Court found all these factors present and noted, "the Secretary clearly appears to be exercising jurisdiction over [defendant's] trash collection business as it regulates [defendant's] operations from the registration to the inspection process." Graham, 865 F.Supp.2d at 956.

Here, it is beyond dispute that Mid-Bronx is a motor carrier within the jurisdiction of the USDOT. All of Mid-Bronx's trucks are commercial vehicles and weigh in excess of 36,000 pounds. Raymond Dep., 79:5-23. Mid-Bronx is registered with the FMCSA. Sirico Decl., ¶7. Mid-Bronx was assigned the USDOT number 1429217, which is displayed on each of its trucks. Sirico Decl., ¶7. The USDOT has inspected Mid-Bronx to ensure the safety of its vehicles and the fitness of its drivers. Id. Mid-Bronx's drivers are required to conduct pre-trip and post-trip inspections pursuant to USDOT regulations. Stark Decl., ¶6. Each of the Plaintiffs has testified that they completed such inspections.  Stark Decl., ¶6, Ex. A;  Raymond Dep., 91:14-95:3; Lee Dep., 36:24-

39:9; Lillard Dep., 55:1-20.

Additionally, Mid-Bronx retains vehicle maintenance and driver safety records in accordance with USDOT requirements. Sirico Decl., ¶8. Accordingly, it is beyond dispute that Mid-Bronx is a motor carrier within the jurisdiction of the USDOT.

### B. Mid-Bronx's Drivers Fall Within The Classification Of Employees Covered By The MCA Exemption.

To be eligible for the MCA exemption, an employer must also demonstrate that the employee for whom the exemption is sought is within the classification of employees covered by the MCA exemption. Cruz, 116 F. Supp. 3d at 246 (S.D.N.Y. 2015). An employee is within the classification of employees covered by the MCA exemption if he is engaged in activities of a character directly affecting safety. Id. It is well established that drivers are within the classification of employees covered by the MCA exemption. See Morris v. McComb, 332 U.S. 422, 430, 68 S.Ct. 131, 92 L.Ed. 44 (1947) ("The drivers are full-time drivers of motor vehicles well within the definition of that class of work by the Commission if the work is done in interstate commerce."). See also Bilyou, 300 F.3d at 222 (2d Cir.2002) (finding that the Secretary of Transportation had jurisdiction over defendant's drivers because they operated vehicles in interstate commerce); Walden v. Sanitation Salvage Corp., Inc., No. 14 CIV. 112 ER, 2015 WL 1433353, at *3, *6 (S.D.N.Y. Mar. 30, 2015, Ramos, J.) ("The four broad categories of workers whose duties are said to directly affect the safety of vehicle operation are: (1) drivers, (2) mechanics, (3) loaders, and (4) helpers of the first three, ... [and] [t]he case law regarding the MCA exemption's application to drivers is well-established."); McBeth v. Gabrielli Truck Sales, Ltd., 768 F.Supp.2d 383, 390 (E.D.N.Y.2010) ("The Department of Labor interprets the MCA exemption to apply to drivers, driver's helpers, loaders, or mechanics whose work directly affects the safety of operation of

vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the MCA."); Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 45 (E.D.N.Y.2010) (noting that common examples of employees who fall under the MCA exemption include "employees who drive an employer's motor vehicles").

Here, it is undisputed that Plaintiffs are employed by Mid-Bronx as drivers. See Dumornay Decl., Ex. A, ¶¶24, 28; Stark Decl., ¶¶13-15. It is also undisputed that Mid-Bronx's drivers continually perform safety activities while driving the trucks on public highways. Stark Decl., ¶¶5-11; Lillard Dep., 55:1-20. Mid-Bronx's drivers are therefore within the classification of employees covered by the MCA exemption.

### C. Mid-Bronx Satisfies the MCA exemption Interstate Commerce Requirement.

To be eligible for the MCA exemption, an employer must also demonstrate that its employees are engaged in the operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce. Bilyou, 300 F.3d at 223-24 (2d Cir. 2002) (finding beer distributor intrastate drivers and helpers covered by MCA exemption). A carrier is not required to physically transport goods across state lines to fulfil the interstate commerce requirement. U.S. v. Yellow Cab Co., 332 U.S. 218, 228, 67 S.Ct. 1560, 91 L.Ed 2010 (1947)("when persons or goods move from a point of origin in one state to a point of origin in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make any portion of the trip any less interstate in character."); 29 C.F.R. § 782.7(b)(1) (interstate commerce requirement satisfied "where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce").

The interstate commerce requirement is satisfied "if the goods being transported within the

borders of one State are involved in a practical continuity of movement in the flow of interstate commerce" even if the carrier's transportation does not cross state lines. Bilyou, 300 F.3d at 223-24 (2d Cir. 2002); 29 C.F.R. § 782.7(b)(2) (explaining intrastate transportation can satisfy the interstate commerce requirement of the MCA if the shipper has a "fixed and persisting transportation intent beyond the terminal storage point at the time of shipment"). Whether the transportation is of an interstate nature can be "determined by reference to the intended final destination" of the transportation when that ultimate destination was envisaged at the time the transportation commenced. Id.

Crucial to a determination of the essential character of a shipment is "the shipper's fixed and persisting intent at the time of shipment. Bilyou, 300 F.3d 217, 224 (2d Cir. 2002)(quoting Foxworthy v. Hiland Dairy Company, 997 F.2d 670, 672 (10th Cir. 2001).). Importantly, "the intent at the time transportation commences fixes the character of the shipment for all the legs of the transport within the United States." Id. "Fixed and persisting intent may be established if the shipper has a factual basis for projecting out-of-state sales, rather than a mere plan to solicit sales out-of-state." Craft v. Ray's LLC, 2009 WL 3163148 at *4 (S.D. Ind. Sept. 29, 2009).

Here, it is beyond dispute that Mid-Bronx is engaged in interstate commerce and the Court should find that Plaintiffs are exempt under the MCA exemption. Mid-Bronx is just one branch, the first leg in a continuous stream of transporting waste and recycling materials collected by Mid-Bronx out of New York State to pre-determined disposal sites. Mr. Sirico has through communications with representatives of Metropolitan Transfer Station and Action Carting on numerous determined that these entities have contracted disposal sites out of state and materials delivered to these sites are immediately transported out of state. Verrilli Decl., ¶ 8; Sirico Decl., ¶12, 14. These communications and this knowledge colored Mid-Bronx's decision to use these

transfer stations for the disposal of the materials it collects. Indeed, because of the representations made to Mr. Sirico by Metropolitan Transfer Station and Action Carting, Mid-Bronx directed its drivers to collect materials from its customers and deliver these materials to Metropolitan Transfer Station and Action Carting with the fixed and persisting intent that those materials would be transported out of New York State. Craft, 2009 WL 3163148 at *4 (S.D. Ind. Sept. 29, 2009)( "Fixed and persisting intent may be established if the shipper has a factual basis for projecting out-of-state sales, rather than a mere plan to solicit sales out-of-state.").

From the moment Mid-Bronx's drivers collected the materials from its clients, those materials were bound for disposal sites outside of New York State because of the affirmative steps taken by Mid-Bronx in securing transfer stations, which disposed of materials transported to them to facilities and landfills outside of New York State. See Hernandez v. Brinks Inc., No. 08-20717-CIV, 2009 WL 113406, at *3 (S.D. Fla. Jan. 15, 2009)(concluding that the defendant was engaged in interstate commerce because it transported checks within the State of Florida that "were destined for banks outside of Florida and transport property destined for interstate and foreign locations"); Alvarado v. I.G.W.T. Delivery Sys., Inc., 410 F.Supp.2d 1272, 1277 (S.D.Fla.2006) (applying MCA exemption to employees who only traveled intrastate but transported letters and packages bound for interstate destinations); Baez v. Wells Fargo Armored Serv. Corp., 938 F.2d 180, 182 (11th Cir. 1991)(finding that the FLSA's MCA exemption applied to drivers and driver's helpers who only traveled intrastate but who transported checks bound for banks outside of Florida).

Importantly, there was no break in the stream of interstate commerce between when Mid-Bronx delivered the materials to Metropolitan and Action and the delivery of those materials to the designated disposal sites. Mid-Bronx's transportation is only one leg of those materials route out of New York State for disposal. "A temporary pause in the [ ] transit [of goods] does not mean

14

that they are no longer 'in commerce'.... [I]f the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points. <u>Bilyou</u>, 300 F.3d at 224 (2d Cir. 2002)(<u>quoting Walling v. Jacksonville Paper Co</u>., 317 U.S. 564, 568, 63 S. Ct. 332, 335, 87 L. Ed. 460 (1943)). The materials delivered by Mid-Bronx to these transfer stations are transported shortly after their arrival to the transfer stations in an unsorted, unprocessed condition out of New York State. Verrilli Decl., 6. Accordingly, Mid-Bronx as the first leg in a continuous and unbroken stream of interstate commerce, which facilitates the disposal of materials collected in New York City outside of New York State, satisfies the interstate commerce requirement of the MCA exemption.

As Mid-Bronx and its employees satisfy the criteria required for the MCA exemption, Mid-Bronx has met its burden of demonstrating that Plaintiffs are exempt from the FLSA's overtime requirements under the MCA exemption. Accordingly, Defendants are entitled to summary judgment and Plaintiffs' FLSA overtime claims should be dismissed.

## II. Defendants are Entitled to Summary Judgment on Plaintiffs' Claims Because There is No Genuine Issue of Fact Requiring Trial Regarding the Applicability of the FLSA MCA exemption to Plaintiffs' New York Labor Law Claims.

The Court should grant Defendants summary judgment and dismiss Plaintiffs NYLL claims because Plaintiffs are FLSA exempt under the MCA exemption. In the Complaint, Plaintiffs allege that Defendants Mid-Bronx and Arnold Sirico failed to pay them overtime compensation in violation of the NYLL. <u>See</u> Dumornay Decl., Ex. A. Similar to the FLSA, the NYLL and NYCRR require, subject to certain exemptions that employees who work in excess of 40 hours in a week receive overtime compensation.

The NYCRR expressly recognizes the applicability of the FLSA MCA exemption to New

York Labor Law: "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 [,] of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

As set forth in detail above, Plaintiffs are exempt from the FLSA's overtime requirements under the FLSA MCA exemption. As Plaintiffs are exempt from the FLSA's overtime requirements under the FLSA MCA exemption, they are also exempt under the NYLL. Accordingly, Plaintiffs' NYLL claims should be dismissed.

**III.    Defendant Arnold Sirico is Entitled to Summary Judgment on Plaintiffs' Claims Because He Is Not An Employer Within The Meaning Of The FLSA Or The NYLL.**

The Court should grant Defendants' summary judgment and dismiss Plaintiffs Claims against Arnold Sirico because he is not an employer within the meaning of the FLSA or the NYLL. In their Complaint, Plaintiffs contend that Arnold Sirico, in addition to Mid-Bronx, is their employer under the FLSA or the NYLL and seek to hold him individually liable for their overtime claims. See Dumornay Decl., Ex. A. Under the FLSA, an employer is defined as, "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C.§ 203(d). Similarly, under the NYLL, an employer is defined as, "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3).

Under certain circumstances, the FLSA and NYLL permit "an individual within a company that undisputedly employs a worker [to be held] personally liable for damages as that worker's 'employer.' " Irizarry v. Catsimatidis, 722 F.3d 99, 105 (2d Cir. 2013)(emphasis added). In assessing whether an individual within a company undisputedly employs a worker, courts

examining the totality of the circumstances apply the four-factor "economic reality" test articulated by the Second Circuit in Carter v. Dutchess Community College, 735 F.2d 8 (2d Cir., 1984) to determine whether an employment relationship exists for purposes of the FLSA and assesses the putative employer's level of operational control over the plaintiffs' employment.

Under the Carter economic-realities test, courts examine whether the purported employer: (i) had the power to hire and fire the employees, (ii) supervised and controlled employee work schedules or conditions of employment, (iii) determined the rate and method of payment, and (iv) maintained employment records. Carter, 735 F.2d at 12 (2d Cir. 1984). Importantly no single factor is dispositive to this inquiry. Rather, the totality of circumstances may be examined in making a determination under the economic realities test.

Here, the totality of the circumstances, weighs heavily against individual liability as Mr. Sirico has no interaction with Plaintiffs and no involvement in their employment. See Tracy v NVR, Inc., No. 04–CV–6541L, 2009 WL 3153150, at *4 (W.D.N.Y. Sept. 30, 2009) ("Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedule or tasks."). Mr. Sirico did not supervise Plaintiffs or establish Plaintiffs' work schedules. Sirico Decl., ¶6. Robert Stark, the Night Foreman –Supervisor, supervised plaintiffs. Stark Decl., ¶¶ 4, 13-15; Raymond Dep.,147:3-8; Lee Dep., 44:19-20; Lillard Dep., 40:17-19.

Indeed, Plaintiffs claim that Mr. Stark exercised control over all facets of their employment with Plaintiff Lillard candidly stating that Mr. Stark "who is our supervisor, our God. He runs everything." Lillard Dep., 39:22-24. Mr. Lillard also described Mr. Stark is the "the ultimate supervisor" and notes, "he's the man that makes all the decision." Lillard Dep., 40:17-19.

Mr. Sirico did not control employee work schedules. Sirico Decl., ¶¶5-6. Mr. Sirico did not determine Plaintiffs' rate of pay or method of payment. Sirico Decl., ¶6. The rate and method of Plaintiffs' compensation is determined by the collective bargaining agreement between Mid-Bronx and the International Brotherhood of Teamsters, the labor organization that represents Plaintiffs and similarly situated employees. Sirico Decl., ¶6. See Park Decl., Ex. A. Mr. Sirico does not maintain employment records for Plaintiffs. Mid-Bronx's office manager, Laura Park, maintains records for all Mid-Bronx's employees. See Park Decl., ¶ 2.

Moreover, while Mr. Sirico arguably has the authority to hire and fire employees, he does not exercise this theoretical authority. Sirico Decl., ¶6. Mr. Sirico does not interview or meet with prospective candidates. Sirico Decl., ¶6. Additionally, he does not discipline or fire employees and does not participate in a manager's decision to discipline an employee. Sirico Decl., ¶6.

It is apparent from the factual record that Plaintiffs named Mr. Sirico as an individual defendant solely because of his title of President of Mid-Bronx as the economic realities test reveals that Mr. Sirico has no interaction with Plaintiffs and is not their employer. Tracy, 04-CV-6541L, 2009 WL 3153150, *5 (W.D.N.Y. 2009) (holding that permitting individual liability under the FLSA based on the individual Defendant's title, function or role within a company, "would license suit under the FLSA against every high level officer and board member of large public companies simply because of the position the individual holds"); Jiao v. Chen, 03-CV- 0165, 2007 WL 4944767 at *10 (S.D.N.Y. 2007) ("where a plaintiff-employee is employed by a corporation, individual officers or directors of the corporation may be 'deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions").

Mr. Sirico is also not Plaintiffs' employer under the FLSA and NYLL because Mr. Sirico does not exercise operational control over Plaintiffs. In addition to the economic-realities test, courts examine whether the purported employer had operational control over the plaintiff's employment. Irizarry, 722 F.3d at 109 (2d Cir. 2013). An individual exercises operational control over employees "if his or her role within the company, and the decisions it entails directly affect the nature or condition of the employees' employment. Id. at 110. Mere ownership or a high-ranking position with a company insufficient to establish individual liability without some involvement in the company's employment of the employees." Irizarry, 722 F.3d at 109 ("Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate "employer" status.").

To qualify as an employer under the FLSA, an individual defendant must possess control over a company's actual operations in a manner that relates to a plaintiff's employment. Irizarry, 722 F.3d at 109 (2d Cir. 2013); Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 464 (S.D.N.Y. 2015) (holding CEO of restaurant corporation who had nothing to do with employee functions but may offer opinions on prospective hosts and signs paychecks was not an employer under the FLSA and NYLL). Evidence of a purported employer's authority over management, supervision, and oversight of the company's affairs "is relevant to the totality of the circumstances in determining [the individual's] operational control of [the company's] employment of [the plaintiff employees]." Irizarry, 722 F.3d at 110 (2d Cir. 2013).

Here, the undisputed record demonstrates that Mr. Sirico does not exercise operational control over plaintiffs' employment. There is no evidence of any actions by Mr. Sirico, which relate to Plaintiffs employment. Mr. Sirico is not present at Mid-Bronx during the hours when

Plaintiffs work. Mr. Sirico does not supervise plaintiffs. Mr. Sirico is not involved in the assignment of trucking routes or schedules to employees.

The record is devoid of any evidence that Mr. Sirico had any direct contact with Plaintiffs during the period covered by this litigation beyond when Plaintiffs actively sought out Mr. Sirico. Plaintiffs seeking out of Mr. Sirico does not transform Mr. Sirico into an employer under the FLSA or NYLL. See, e.g., Copantitla v. Fiskardo Estiatorio, Inc., 788 F.Supp.2d 253, 314 (S.D.N.Y.2011) (explaining that "[plaintiff's] perception that [defendant] is an 'owner' does not make him an employer"); Chao v. Vidtape, Inc., 196 F.Supp.2d 281, 291 (E.D.N.Y.2002), aff'd as modified, 66 Fed. Appx. 261 (2d Cir.2003) (summary order) (finding testimony that "most [employees] thought [defendant] was a 'boss' when asked" to be "insufficient to support a definition of employer under the economic realities test"). Since Mr. Sirico does not have operational control over Plaintiffs' employment and the Carter factors weigh against a finding of individual liability, Mr. Sirico is not an employer within the meaning of the FLSA and NYLL.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully submit the Court should grant the Defendants' motion in its entirety and dismiss the Complaint with prejudice.

Dated: White Plains, New York
      July 22, 2016

                                    TRIVELLA & FORTE, LLP

                                    /s/ Jael Dumornay
                                    By: Jael Dumornay
                                    Jonathan M. Bardavid
                                    Attorneys for Defendants
                                    1311 Mamaroneck Avenue, Suite 170
                                    White Plains, NY 10605
                                    Tel. No. : (914) 949-9075

To:  Lloyd Ambinder, Esq.

Suzanne Leeds Klein, Esq.
Jack L. Newhouse, Esq.
Virginia & Ambinder, LLP
Attorneys for Plaintiffs
40 Broad Street, 7th Floor
New York, NY 10004